# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| W.S., *et al.*, | ) |
| Plaintiffs, | ) Civil Action No. 15-406 |
| v. | ) Judge Mark R. Hornak |
| WILMINGTON AREA SCHOOL DISTRICT, | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Some of the disagreements between the parents of a young disabled child are before this Court in the context of a special education lawsuit against the child's school district. The question is whether the mother has standing to bring this case on behalf of her son. If her former husband, the child's father, has sole legal custody of the child under Pennsylvania law, she does not.

Pending before the Court is Defendant Wilmington Area School District's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), ECF No. 20, raising that standing issue. The Court has reviewed Defendant's motion along with all filings in support of and in opposition to it (ECF Nos. 20; 21; 29; 30; 31; 35; 36; 37; 39) and heard oral argument on September 16, 2015. Because the mother lacks standing to bring this action, Defendant's Motion is granted.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

The dispute giving rise to this case is the latest in a heated battle over the custody and education of W.S., an eight-year-old, non-verbal autistic child. *See* ECF Nos. 1, at 1 ¶ 5; 30, at 2. Given the complex undercurrents in this suit, an extended explication of how the parties arrived here is appropriate.

## A. The Underlying Custody Fight

W.S.'s natural parents, A.S. ("A.S." or "Mother") and B.S. ("B.S." or "Father") divorced on October 19, 2012 in Ohio. ECF No. 16, at 42. At the time of divorce Mother and Father agreed to a shared custody arrangement set out in a "Shared Parenting Plan."[1] *See* ECF No. 30-2. That plan thoroughly contemplated issues that may arise between Mother and Father and "attempt[ed] to resolve issues of major decisions concerning the children's health, social situations, morals, welfare, education and economic environment." *Id.* at 4. It laid out in explicit detail everything from the behaviors expected of the parents ("[c]ommunicate with the other parent openly, honestly . . . [r]efrain from arguing, fighting, or degrading the other parent), *id.* at 2, to their rights and obligations ("[t]he right to make decisions concerning the children in health, social situations, morals, welfare, education, legal and economic environment" and an obligation to "[n]otify the other parent as soon as possible of hospital confinement . . . of the children."), *id.* at 3–4.

---

[1] Specifically with respect to education under that Plan, the parents agreed to each have the right to "[c]onsult with school officials concerning the children's welfare and emotional status, and the right to inspect and receive student records to the extent permitted by law," *id.* at 6, "[t]o receive . . . copies of all school reports, schedules of school events, notices of parent/teacher conferences and school programs, events, or activities," and "[t]o be the children's legal custodian," *id.* As will be seen, a subsequent order of the Cuyahoga County Court of Common Pleas more specifically addressed educational decisions, and on top of that, Mother has taken a very specific position in other courts as to Father's legal custody role.

"However, almost immediately upon the divorce, the parties' fragile agreement started to crumble."[2] ECF No. 16, at 44.

Mother and Father disagreed about everything from parenting time to the (filled-in) swimming pool at Father's new home. *Id.* at 44. There was a lengthy dispute over where to enroll W.S. and his brother in school. *Id.* at 44–45. The parties vehemently disagreed about immunizing the children and the qualifications of nannies hired by Father *Id.* at 45–46. An internationally recognized psychologist retained to serve as "Parenting Coordinator" resigned after only six months because of difficulties with both parents. *Id.* at 46. As Cuyahoga County Judge Diane M. Palos noted, "[t]he parties fail to agree on virtually all of the aspects of the children's care." *Id.* at 45. And as Mother herself said: "the parties are completely unable to exercise a minimal degree of cooperation." ECF No. 35-1, at 21. The disagreements follow a general pattern where the parties fail to reach consensus and one acts unilaterally and the other then does not participate in or support the action. ECF No. 16, at 45.

So, Mother filed several motions in the Cuyahoga County Court of Common Pleas. Among them were a Motion to Terminate Shared Parenting and in the alternative to Modify Shared Parenting, a Motion for Protective Order, a Motion for Sanctions, and a Motion for Attorney Fees. *Id.* at 41. Father filed several cross-motions as well. *Id.* The resulting Order is not a model of clarity, but ultimately awarded "decision making as to school enrollment, medical and dental treatment for both of the children" to Father. *Id.* at 53. The Ohio court also denied Mother's request to be the "primary parent for the allocation of parental rights and responsibilities" and stated that "all other orders in the Shared Parenting Plan, including but not

---

[2] The Cuyahoga County Court of Common Pleas Order of November 1, 2013, ECF No. 16, at 41, lays out the twists and turns of the sometimes boiling feud between A.S. and B.S. in even greater detail.

3

limited to the tax exemption and summer vacation, holidays and days of special meaning, shall remain in full force and effect." *Id.* at 54, 57.

Mother then filed a Motion to Modify Custody in the Court of Common Pleas in Lawrence County, Pennsylvania.[3] ECF No. 35-1, at 12. In that motion, Mother asserted that "the Cuyahoga County Court of Common Pleas inappropriately awarded [Father] a position most aptly described as primary legal custody and gives him the final authority to make decisions involving important matters affecting the children's lives . . . ." *Id.* at 16. Mother signed that verified pleading, affirming that the facts in it were true and correct. *Id.* at 18.

The Lawrence County court dismissed that motion, concluding that it lacked jurisdiction. ECF No. 16, at 39–40. Mother appealed to the Pennsylvania Superior Court. In her brief filed with the Superior Court, Mother once again stated "Judge Palos [in the Cuyahoga Court of Common Pleas] awarded [Father] sole legal custody of the minor children." *A.L.-S. v. B.S.*, 2014 WL 8332194, at *8 (Brief of Appellant, Pa. Super. Ct. Dec. 19, 2014); ECF No. 35-1, at 4. In its Opinion and Order dated May 27, 2015, the Superior Court stated that "the Cuyahoga County Court of Common Pleas in Ohio entered an order granting Father sole legal custody of the children," but determined that the Lawrence County Court did indeed have jurisdiction, reversing and remanding for a determination on the merits. *A.L.-S. v. B.S.*, 117 A.3d 352, 354 (Pa. Super. Ct. 2015). That merits decision has yet to come down.

### B. This Suit under the Individuals with Disabilities Education Act

One dispute between Mother and Father over W.S.'s education has come to a head in this suit. The Individuals with Disabilities Education Act ("IDEA") is designed to ensure that disabled children are provided "a free appropriate public education ["FAPE"] that emphasizes

---

[3] Both Mother and Father moved to Lawrence County after the divorce. *See* ECF No. 16, at 23.

special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 42 U.S.C. § 1400 *et seq.*[4] It requires public schools to provide individualized education plans ("IEPs") based on appropriate evaluations that are delivered in the least restrictive environment. *Id.* § 1414; 34 C.F.R. § 300.114. The IDEA also gives parents substantial rights to "participate not only in the implementation of the IDEA's procedures but also in the substantive implementation of their child's program." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 517 (2007). Further, parents can challenge the adequacy of their child's FAPE by requesting an "impartial due process hearing" on "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6)(B).

Mother alleges that Wilmington deprived W.S. of the FAPE to which W.S. was entitled by (1) failing to obtain the most recent records from W.S.'s out-of-state transfer and thus not using those records to properly plan W.S.'s academic program; (2) failing to conduct a Functional Behavioral Assessment ("FBA") or to implement an individualized Positive Behavior Support Plan ("PBSP"); and (3) failing to appropriately address W.S.'s communication needs by providing specifically designed instruction and access to individualized assistive communication technology. ECF No. 1, at 2–3.

The first stop for Mother was a due process hearing, which was conducted over several days in the fall of 2014. *See* ECF No. 16, at 4. There, Mother claimed that W.S. was denied a FAPE and is owed compensatory education from the 2013-2014 school year through December 24, 2014 when the Hearing Officer issued his decision. *Id.* at 6. Wilmington argued that it met its

---
[4] As amended, 20 U.S.C. § 601 *et seq.*—the Individuals with Disabilities Education Improvement Act of 2004.

obligations under the IDEA and that W.S. was at all times provided with a FAPE. *Id.* Wilmington also objected to Mother's assertion that she had standing before the Hearing Officer. *See* ECF No. 21, at 10. Father, though not a party to that proceeding, sided with the school district. He believes that W.S has received a FAPE from the Wilmington Area School District throughout his attendance there. ECF No. 16, at 4. Ultimately, the Hearing Officer found that W.S. had been provided with a FAPE but also required Wilmington to re-issue his IEP and craft an individualized behavior support plan based on a new FBA. *Id.* at 20.

Mother subsequently brought this action seeking reversal of the Hearing Officer's decision. ECF No. 1, at 3 ¶ 13. Mother also seeks compensatory damages and attorney's fees and costs. *Id.* ¶ 10. Here, Mother argues that the Hearing Officer committed a fundamental legal error in concluding that W.S. was not denied a FAPE. *Id.* ¶ 11. Mother recognizes that the Hearing Officer did grant a substantial portion of the relief she sought at the due process hearing by ordering Wilmington to perform a FBA and develop a PBSP for W.S. But she also maintains that the Hearing Officer erred in concluding that those deficiencies did not rise to the level of full-fledged denial of a FAPE. *Id.*

### C. Wilmington's Motion to Dismiss

Wilmington then filed a Motion to Dismiss pursuant to Rule 12(b)(1). ECF No. 20. Wilmington argues that Mother lacks standing to bring this suit because Father retains sole legal custody of W.S. and was specifically awarded the right the make educational placement decisions (thereby making him the only parent with standing under the IDEA).[5] *Id.* at 2.

---

[5] Wilmington also argues that the Court lacks subject matter jurisdiction because Plaintiffs have failed to exhaust their administrative remedies as required by 20 U.S.C. § 1415, and that the Court should abstain because a ruling here would infringe upon the rights of state courts to determine important matters of state law. ECF No. 20, 2–3. The Court need not, and does not, reach those other potential grounds for dismissal.

Mother counters that she does indeed have standing under the IDEA. ECF No. 30, at 5. She argues that as W.S.'s biological parent, she presumptively has standing and that the presumption has not been overcome because "[t]here is no court order granting [Father] the exclusive right to sole custody or to control educational decisions for W.S. or divesting [Mother] of those rights." *Id.* at 7. The parties briefly discussed Mother's contrary positions with respect to custody taken before other courts and Mother explained them away as "incorrect and not relevant to [this] proceeding." *Id.* at 10. After probing the issue more thoroughly at oral argument, the Court ordered additional briefing on the subject of judicial estoppel in the context of the standing issue. ECF No. 34.

## II. **STANDARD OF REVIEW**

A motion to dismiss must be granted if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Our Circuit has "cautioned against treating a Rule 12(b)(1) motion as a Rule 12(b)(6) motion," *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), because dismissal under Rule 12(b)(1) is not a judgment on the merits, rather it is a determination that the court lacks authority to hear the case, *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). As such, "the standard for surviving a Rule 12(b)(1) motion is lower than that for a 12(b)(6) motion." *Gould Elecs. Inc.*, 220 F.3d at 178.

A 12(b)(1) motion to dismiss "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction . . . . In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff. In reviewing a factual attack, the court may consider evidence outside the pleadings and "no presumptive truthfulness attaches to plaintiff's

allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* at 176; *Mortensen*, 549 F.2d at 891.

### III. DISCUSSION

#### A. Standing under the IDEA

As a general matter, the IDEA gives biological parents standing to bring due process claims on behalf of their disabled children relating to any matter involving "the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child." 20 U.S.C. § 1401(23)(A) (defining "parent" as "a natural, adoptive, or foster parent of a child"); 20 U.S.C. 1415(b)(3)(B).

However, the 2006 amendments to the IDEA implementing regulations clarify exceptions to this rule in divorce cases. Those amendments maintained the general presumption that biological parents have standing, but provide that a biological parent lacks standing where he or she "does not have legal authority to make educational decisions for the child." 34 C.F.R. § 300.30(b)(1). Further, where "a judicial decree or order identifies a specific person or persons . . . to act as the 'parent' of a child or to make educational decisions on behalf of a child, then such person or persons shall be determined to be the 'parent' for purposes of [the IDEA]." *Id.* § 300.30(b)(2).

Because A.S. and B.S. are divorced, the parent who has standing to bring this due process claim under the IDEA is the one that has legal authority to make educational decisions for W.S. And under Pennsylvania law, a parent with sole legal custody possesses the exclusive power to make educational decisions for the child. *See* 23 Pa. Cons. Stat. § 5322 (2011). Any judicial decree identifying either Mother or Father as the one with legal authority to make educational decisions also designates that parent as the one with standing in this suit. *Id.*

8

As it happens, there are several such decrees, each of which potentially solves the custody riddle. First is the "Shared Parenting Plan" implemented upon Mother and Father's divorce. ECF No. 30-2. Second is the Cuyahoga County Judgment Entry with Findings of Fact and Conclusions of Law, which was the judgment resulting from Mother's Motion to Terminate Shared Parenting Plan. ECF No. 16, at 41. There the Cuyahoga County Court awarded "decision making as to school enrollment" to Father. ECF No. 16, at 53. Third, and finally, is the May 27, 2015 opinion of the Pennsylvania Superior Court. The Superior Court reversed and remanded to the Lawrence County court on a jurisdictional issue. *A.L.-S.*, 117 A.3d 352; ECF No 16, at 21. That opinion described the basis of Mother's motion as her claim that "the Ohio court inappropriately granted Father sole legal custody of the children." *A.L.-S.*, 117 A.3d at 354; ECF No 16, at 22.

To conclude that Mother has standing in this suit (and therefore deny Wilmington's motion to dismiss and allow the suit to proceed), this Court would have to interpret and apply one or more of the state court orders relating to custody. Mother says that this is easy. She urges the Court to interpret the Cuyahoga County Court of Common Pleas Order as a simple modification of the Shared Parenting Plan and argues here that after that judgment, she retained shared legal custody of W.S. *See* ECF No. 30, at 3; 30-1, at 2.

Not so fast says Wilmington. It asserts that "the custody order in this case awards sole legal custody of W.S." to Father (and that it has maintained that position since the initial due process hearing). ECF No. 21, at 10. Wilmington says that there is no way this Court could interpret any or all of the state court orders as granting Mother custody (and thus standing) because the motion to modify custody pending in the Lawrence County Court seeks to modify the custody arrangement prospectively and "not to interpret what the rights of the parties are

under the current order," which have been determined conclusively. *Id.* Wilmington further argues that Mother's "repeated admissions" to other courts that Father has sole legal custody bar her from taking a contrary position here. *Id.* at 11. Wilmington says the result is that under Pennsylvania law, Father has legal custody, so Father—and Father alone—has standing to address IDEA/FAPE issues.

With the lack of clarity in the several state court orders on custody, interpreting and applying them here could be a precarious task. But there is a clear path that makes wading into the ongoing custody battle being waged in the state courts unnecessary. Mother has demonstrably taken the position in other legal proceedings that Father has sole custody of W.S., and has done so before multiple other tribunals of record. The Court will protect its decisional integrity and resolve the custody matter—and thus the standing issue—by taking her word for it.

### B. Judicial Estoppel

Judicial estoppel is one arrow in the Court's equitable quiver designed to remedy bad faith inconsistencies in a party's pleadings. *See Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 778 (2001) ("Judicial estoppel's sole valid use . . . is to remedy an affront to the court's integrity."). "It is not intended to eliminate all inconsistencies, however slight or inadvertent, rather it is designed to prevent litigants from 'playing fast and loose with the courts.'" *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) (*citing Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510, 513 (3d Cir. 1953)).

While there exists no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001), our Court of Appeals has given us three factors that must be considered. First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. *Montrose*, 243 F.3d

10

at 780. Second, that party must have changed their position in bad faith, i.e. with an intent to play fast and loose with the court. *Id.* Finally, judicial estoppel must be tailored to address the harm identified and there must be no lesser sanction that would adequately remedy the damage done. *Id.* Importantly, however, "[e]ach case must be decided upon its own particular facts and circumstances." *Scarano*, 203 F.2d at 513; *see also Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 108 (3d Cir. 1999) ("proper exercise of [the Court's considerable] discretion requires the court to focus attentively on the particularly distinctive features of the case before" it).

### 1. Inconsistent Positions

Mother has indisputably taken inconsistent positions with respect to the existing custody arrangement for W.S. and therefore her standing under the IDEA. Mother admits as much in her pleadings. *See* ECF No. 30, at 10; ECF No. 36, at 4 ("Plaintiff mistakenly mischaracterized her custody status regarding W.S."); ECF No. 38, at 3 (stating that Mother's positions were consistent until they weren't).

In verified pleadings to the Lawrence County Court of Common Pleas and to the Pennsylvania Superior Court, Mother represented that Father has "sole legal custody" or "primary legal custody" of W.S. ECF No. 35-1, at 16; *A.L.-S.*, 2014 WL 8332194, at *8. As recently as July 8, 2015 Mother requested that the Lawrence County court modify the existing custody arrangement to award her "at least shared legal custody." ECF No. 35-1, at 23. Before this Court, however, Mother now declares that she currently "shares custody" with Father. ECF No. 1, at 1 ¶ 6.

11

There is no reconciling these positions. Mother has told other tribunals that she lacks custody but tells this one that she has enough to maintain standing in this suit. Those are "inconsistent positions" for the purposes of judicial estoppel.

### 2. Bad Faith

"The basic principle is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Ryan Operations*, 81 F.3d at 358 (*citing* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981)). To be judicially estopped, a party must change their position in bad faith—i.e., with the intent to play fast and loose with the court. *Id.* at 361. That bad faith requires (1) behaving in a manner that is somehow culpable and (2) the culpable behavior must be vis-à-vis the Court. *Montrose Med. Grp.*, 243 F.3d at 780–81. Culpability vis-à-vis the court means that bad faith exists only where the initial claim was accepted or adopted by a court or agency. *Id.* at 778.

A party need not benefit from the prior position. *Ryan Operations*, 81 F.3d at 361; *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 324 (3d Cir. 2003) ("the presence or absence of any such benefit is merely a factor in determining whether the evidence would support a conclusion of bad faith"). And while judicial estoppel is inappropriate where "the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court," *Ryan Operations*, 81 F.3d at 362, "a rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose," *Krystal*, 337 F.3d at 321 (*citing Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988)).

Mother argues that there was no bad faith here because her custody status was merely "mistakenly mischaracterized" to other courts. ECF No. 36, at 4. Mother downplays that "mistaken mischaracterization" by (1) blaming Mother's family law attorney, (2) saying it failed to rise to the level of a "position" because it occurred only in a recitation of procedural history, and (3) by her now taking steps to attempt to "correct" the filings in state court. *Id.* at 4, 6. Mother further asserts that her motives are pure in bringing this action and that she has not actually succeeded in persuading a court to accept the position that Father has full legal custody. *Id.* at 8.

Wilmington, on the other hand, suggests that Mother's shifting positions coincide with her shifting needs in different litigation and that the conduct is an attempt to mislead the Court and usurp Father's rights to make educational decisions for W.S. ECF No. 35, at 5.

The Court first notes that there is ample support for a rebuttable inference that Mother acted in bad faith, as that term is used in this context. On this point, the Third Circuit's decision in *Krystal* is instructive. There, in the bankruptcy setting, the Circuit found bad faith where a debtor failed to include claims in its disclosure statement to the bankruptcy court (so as to minimize its assets) and later tried to pursue them. *Krystal*, 337 F.3d at 321–23. During the bankruptcy proceedings, Krystal Cadillac had a duty to fully disclose its assets. When it failed to disclose claims it had against GM for potentially violating a franchise agreement, Krystal was judicially estopped from later pursuing those claims in a separate, subsequent action. *Id.* at 320. There was both knowledge of the claims (Krystal knew it could potentially recover for GM's breach) and a motive to conceal them (to shield any recovery from its creditors). *Id.*

Here too Mother knew about the various Ohio and Pennsylvania orders relating to her custody status. Indeed she was and is continuing to challenge those orders. Mother also has a

13

motive to dodge her prior positions: without asserting that she has custody, she would have no standing to bring this suit before this Court. Therefore, the Court properly infers that Mother acted in bad faith.

Next, it is plain that Mother's prior position was accepted or adopted by another tribunal. Mother half-heartedly argues that the position was never "accepted" but in the same breath concedes to the Pennsylvania Superior Court's "limited adoption." ECF No. 36, at 8. Limited though it may be to "the Court's presentation of the factual background" of the case, Mother's position that Father has sole legal custody was nevertheless adopted by that court. *A.L.-S.*, 117 A.3d at 354 ("the Cuyahoga County Court of Common Pleas in Ohio entered an order granting Father sole legal custody of the children."). Moreover, it does create a meaningful risk of inconsistent determinations. *See New Hampshire*, 532 U.S. at 751. It is distinctly possible that if this Court accepted Mother's current position and found she had custody and allowed her to continue this suit, a subsequent state court judgment, relying on what Mother has told multiple state courts, could find that the custody arrangement is something very different. Mother's behavior is culpable in the judicial estoppel context and it is therefore culpable vis-à-vis the Court.

In a last-ditch attempt to avoid being estopped, Mother attempts to take back her earlier state court pleadings. ECF No. 36, at 4 (Mother's family law attorney "will be filing an Amended Petition to Modify Custody and clearly state that there was an error."). Wilmington points out, however, that that Amended Petition maneuver came only after the family law attorney was contacted by Mother's counsel in this case, after oral argument, and after Mother faced the specter of being judicially estopped. ECF No. 39, at 3. Mother's eleventh hour endeavor cannot save the day. *See Krystal*, 337 F.3d at 321.

The Court concludes that Mother has acted in bad faith. In so doing, the Court does not question Mother's personal motives in seeking to be engaged with W.S.'s education. The record is clear that both of W.S.'s parents are highly committed and involved with giving him the best possible education. But the record is equally clear that when they do not agree, all bets are off and they will use any means available—including the courts—to vindicate their points of view. Mother's various verified state court pleadings evince her recognition that she does not have the custody status necessary to maintain this suit, and the Court will accept that recognition here.

### 3. No Lesser Adequate Remedy

Finally, judicial estoppel must only be invoked when the Court is satisfied that "(1) no sanction established by the Federal Rules or a pertinent statute is up to the task of remedying the damage done by a litigant's malfeasance; and (2) the sanction of judicial estoppel is tailored to address the harm identified." *Montrose*, 243 F.3d at 784 (internal alterations and quotations omitted). Further, "equity requires that the presiding court give the party to be estopped a meaningful opportunity to provide an explanation for its changed position." *Krystal*, 337 F.3d at 320.

Both parties were given notice of possible judicial estoppel at the Court's September 16, 2015 hearing. Further, the Court gave both sides an opportunity to fully brief the issue. *See* ECF Nos. 34; 35; 36; 37; 39. Thus, Mother most certainly has had a meaningful opportunity to explain her changed position. But as set out above, her explanations are unavailing.

The Court has considered all other sanctions made available to it by the Federal Rules of Civil Procedure, statutes passed by the Congress, and its own inherent powers. None are up to the current task. Mother urges the Court to stay the case pending the outcome of the ongoing state court proceedings. ECF No. 38, at 6. While that route could in theory save judicial

resources at the margin, it does not address the core concerns here: whether this Court has subject matter jurisdiction at all and preservation of the decisional integrity of the judicial process. Thus, the only remedy that is tailored to address the harm to the Court's decisional and adjudicatory integrity caused by Mother's shifting positions is to estop her from taking the position that she has custody sufficient to maintain this IDEA suit. It appears Mother's purpose in controverting the prior positions she has taken in the state courts is to maintain standing here. It is an attempt to circumvent adverse state court decisions and the only appropriate action here is to hold Mother to the custody positions she has taken in, and that have been accepted by, the state courts. Consequently, she lacks standing under the IDEA.

\* \* \*

The Court recognizes the impact of this determination. *See Ryan Operations*, 81 F.3d at 365. But "[t]he fact that a sanction is to be used sparingly does not mean that it is not to be used when appropriate." *Krystal*, 337 F.3d at 325. The Court concludes that in light of Mother's state court pleadings, her assertion of custody here was an attempt to gain standing where she otherwise has none. There is no lesser sanction that would address this state of affairs. Because Mother cannot now claim she has the necessary custody status, Mother lacks standing under the IDEA. Wilmington's Motion to Dismiss is granted on that basis.

One final point. Critical to this exercise of the Court's inherent, equitable power is the reality that W.S. will not lose the protections to which he is entitled under the IDEA.[6] Holding that Mother is estopped here from asserting that she has custody of W.S. (and thus lacks standing

---

[6] Contrary to Mother's assertions, the Court is not "silenc[ing] a disabled child." *See* ECF No. 36, at 1. Her actions in other legal proceedings have consequences and taking inconsistent positions before different courts of law whenever it suits one's then-current goals should not be permitted. The decision here protects the Court's decisional integrity, promotes respect for our judicial system, and does not impair W.S.'s continued protection by the IDEA.

16

to bring this suit) does not mean that *no one* can bring an IDEA claim on W.S.'s behalf. Rather, unless and until the custody arrangement is changed by a state court with the power to do so, Father will be able to sue if there is a legal issue with the education W.S. is receiving. Thus, the Court is satisfied that the important protections and procedures of the IDEA remain freely available to W.S.

## IV. CONCLUSION

For the foregoing reasons, Wilmington's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is GRANTED.

An appropriate Order will issue.

_____
Mark R. Hornak
United States District Judge

Dated: November 30, 2015

cc: All counsel of record